UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

MARK P. FRANCIS,            )
      Plaintiff,         )
                            )
vs.                         )        1:07-cv-0626-RLY-JMS
                            )
AIT LABORATORIES,           )
      Defendant.         )

**ENTRY ON AIT'S MOTION FOR SUMMARY JUDGMENT ON FRANCIS'S BREACH OF CONTRACT CLAIM AND ON AIT'S FRAUD, UNJUST ENRICHMENT, AND CONVERSION CLAIMS**

Mark P. Francis ("Plaintiff") is a former employee of the defendant, AIT Laboratories ("AIT"), who was terminated for his alleged poor performance. Plaintiff thereafter filed the present lawsuit for breach of contract contending that, pursuant to his employment agreement, he is entitled to upwards of a ten percent ownership interest in AIT and that AIT has not provided him with the same. AIT responded with an Answer and Counterclaim alleging that Plaintiff is liable for resume fraud (Count I), unjust enrichment (Count II), and conversion for failing to return a laptop computer AIT provided to him at the commencement of his employment (Count III). AIT now moves for summary judgment on Plaintiff's breach of contract claim and on Counts I-III of its Counterclaim. For the reasons set forth below, the court **GRANTS** in part, and **DENIES** in part, AIT's motion.

## I.     Factual Background

1. On October 27, 2005, Plaintiff's position as Regional Sales Representative at eScreen, Inc. ("eScreen") was eliminated as a result of the company's restructuring of its sales staff. His termination was effective October 28, 2005. (Plaintiff's Ex. A; (Deposition of Mark Francis ("Plaintiff Dep.") at 27-28).

2. The following month, Plaintiff contacted a former work colleague who now worked for AIT, Robert Foery, Ph.D. ("Dr. Foery") (Plaintiff Dep. at 47, 50-52). Plaintiff contacted Dr. Foery because he was "unemployed and looking for work and to see if there were any opportunities at AIT." (Plaintiff Dep. at 50).

3. Dr. Foery told Plaintiff to send him his resume. Plaintiff responded that it was not "completely updated." (Plaintiff Dep. at 52, 55).

4. The resume that Plaintiff sent to Dr. Foery indicated that Plaintiff was presently employed at eScreen. More specifically, it listed Plaintiff's eScreen employment as spanning from "12/2002 to present." (Affidavit of Michael Evans ("Evans Aff."), Ex. 1).

5. Dr. Foery forwarded Francis's resume on to AIT President and CEO Michael Evans, Ph.D. ("Dr. Evans"). (Plaintiff Dep. at 58).

6. Dr. Evans e-mailed Plaintiff, informed him that he had received his resume, and asked him if he would like to interview with AIT. (Evans Aff. ¶ 7).

7. Plaintiff contacted Dr. Evans by telephone, and they discussed AIT and Plaintiff's professional experience for 20 to 30 minutes. (Plaintiff Dep. at 60-61; Evans Aff.

¶ 9).

8. Plaintiff testified that he informed Dr. Evans that he was "let go from [eScreen], they restructured, and I'm . . . looking for a position." (Plaintiff Dep. at 63). Upon further questioning, Plaintiff testified that he "never said that [he] was still working for eScreen. . . . [He] just said that was [his] previous job." (Plaintiff Dep. at 64).

9. On December 28, 2005, Plaintiff flew to Indianapolis from Georgia to formally interview for AIT's director of sales position. (Plaintiff Dep. at 29, 65-66; Evans Aff. ¶ 10).

10. On December 30, 2005, Plaintiff again contacted Dr. Evans by telephone and told him that he was interested in coming to work for AIT. (Plaintiff Dep. at 74-75; Evans Aff. ¶ 12). Plaintiff informed Dr. Evans that he would like an ownership interest in AIT, and suggested that he receive a 5% ownership interest "up front" and an additional 1% ownership interest each January through January 2011. (Plaintiff Dep. at 75-76). Dr. Evans asked Plaintiff to put what he wanted in writing and to send it to him to consider. (Plaintiff Dep. at 87; Evans Aff. ¶ 12).

11. Plaintiff then sent Dr. Evans an e-mail suggesting that his salary should be $100,000, that his business-related expenses should be covered, and that he should receive the discussed ownership interest. (Plaintiff Dep. at 93-94; Evans Aff. ¶ 12).

12. In or around this time frame, Plaintiff informed Dr. Evans that he was on the

        COBRA healthcare plan, and that, if possible, he would like his health insurance benefits to begin immediately.  (Plaintiff Dep. at 112-13).

13. In early January 2006, Plaintiff returned to Indianapolis to meet with Dr. Evans. (Plaintiff Dep. at 87; Evans Aff. ¶ 13).

14. Plaintiff paid for the travel expenses that he incurred as a result of the December and January trips to Indianapolis.  Plaintiff was reimbursed by AIT for his travel expenses in the amount of $1,039.72.   (Affidavit of Edvin Xhako ("Xhako Aff.") ¶¶ 2-4).

15. Two letters, dated December 30, 2005, and signed by Plaintiff and Dr. Evans on January 3, 2006, are in evidence and are referred to by AIT as "offer letters."  The "first" offer letter indicates that if Plaintiff were to accept employment with AIT, he would be paid a "salary" of $100,000, would be reimbursed for certain expenses (i.e., travel, cell phone, car, etc.), would receive benefits (i.e., heath, dental, and disability insurance, etc.), and would receive a moving allowance. (Evans Aff., Ex. 2).  The "second" offer letter is the same as the first in all material respects, except that the second offer letter contains an "ownership" section indicating that Plaintiff would receive a 5% ownership interest in AIT as well as another 1% ownership interest per year each January 1 for a period of five years. (Evans Aff., Ex. 3; Plaintiff Dep. at 89).

16. In January 2006, Plaintiff began working at AIT as its director of sales.  (Xhako Aff. ¶ 5).

17. AIT provided him with a laptop computer worth $1,451.14 shortly thereafter. (Plaintiff Dep. at 102-03; Evans Aff. ¶ 15; Xhako Aff. ¶ 8).

18. Plaintiff testified that he believed that the laptop was his because, as an owner in the company, he requested the same and because he did not have to sign an AIT document when the laptop was issued. (Plaintiff Dep. at 102-03).

19. Plaintiff worked primarily from his home office in Cummings, Georgia, although he would occasionally travel to Indianapolis to meet with AIT's sales staff. (Evans Aff. ¶ 15).

20. On May 19, 2006, Dr. Evans sent Plaintiff a formal letter informing him that his employment with AIT had terminated effective that day. The reasons for the termination were based upon the performance and activities of the Sales and Marketing Department. (Plaintiff's Ex. E).

21. On May 24, 2006, Dr. Evans sent Plaintiff an e-mail message offering Plaintiff six (6) weeks of continued salary and a positive letter of reference if Plaintiff returned the laptop and resigned his 5% ownership interest in the company. (Plaintiff's Ex. D).

22. Plaintiff interpreted Dr. Evans' offered separation agreement to indicate that if Plaintiff were to return the laptop, then he would essentially be resigning his ownership interest in AIT. As a result, Plaintiff did not return the laptop. (Plaintiff Dep. at 103-04).

23. On July 11, 2006, Plaintiff faxed Dr. Evans a letter which contained a counteroffer

      to Dr. Evans' proposed separation agreement. Plaintiff requested that he be given a 5% ownership interest in AIT and a severance package for eighteen months. Plaintiff stated that if Dr. Evans agreed to these terms, he would waive his "additional" 5% ownership interest in AIT. The letter advised that the counteroffer would expire on July 14, 2006. (Plaintiff's Ex. H).

24. On July 19, 2006, Plaintiff sent an e-mail message to Dr. Evans, stating that he would hold his counteroffer open until July 21, 2006. He also noted that he did not understand why he was ultimately terminated. (Plaintiff's Ex. I).

25. Again, after he did not hear from Dr. Evans, Plaintiff sent an additional e-mail to Dr. Evans on July 27, 2006, requesting a response. Plaintiff stated that due to financial distress, he was willing to give up his ownership interest in AIT in exchange for the severance package he requested in his July 11 e-mail. (Plaintiff's Ex. J).

26. On July 30, 2006, Dr. Evans sent Plaintiff a second termination letter, listing numerous reasons for his termination, including "[m]isrepresentation of your professional experience and qualifications on your application to AIT Laboratories." (Plaintiff's Ex. K).

27. On May 17, 2007, Plaintiff filed the present lawsuit for breach of contract.

## II. Summary Judgment Standard

      A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there

is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is "material" if it is outcome determinative. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "genuine" where the evidence "is such that a reasonable jury could return a verdict for the non-moving party." *Id.*

In determining whether a genuine issue of material fact exists, the court must view the record and all reasonable inferences in the light most favorable to the non-moving party. *National Soffit & Escutcheons, Inc. v. Superior Systems, Inc.*, 98 F.3d 262, 264 (7th Cir. 1996). While the moving party bears the burden of demonstrating the "absence of evidence on an essential element of the non-moving party's case," *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), the non-moving party may not simply rest on the pleadings, but "must affirmatively demonstrate by specific factual allegations that a genuine issue of material fact exists for trial." *Id.* If the non-moving party fails to make a sufficient showing on an issue to which he has the burden of proof, the moving party is entitled to judgment as a matter of law. *Ripberger v. Western Ohio Pizza, Inc.*, 908 F.Supp. 614, 617 (S.D. Ind. 1995) (*citing Celotex Corp.*, 477 U.S. at 323).

**III.    Discussion**

    **A.    Breach of Contract and Fraud**

Plaintiff alleges that pursuant to his employment contract with AIT, he was "entitled to 5% ownership of AIT [as of January 1, 2006] and another 5% of AIT prorated over the next 5 years for a cap of 10%." (Complaint ¶ 13). Plaintiff alleges that AIT

breached the employment contract by failing to provide him with the same. AIT argues that it is entitled to summary judgment because: (1) the first offer letter (which does not contain an ownership provision) controls because the second offer letter lacks consideration; (2) to the extent the second offer letter controls, Plaintiff is only entitled to a 5% ownership interest in AIT; and (3) AIT is free to void whichever offer letter controls because Plaintiff engaged in resume fraud. The court will address these arguments in turn below.

### 1. Consideration

In this case, there are two offer letters, dated December 30, 2005, and signed by Plaintiff and Dr. Evans on January 3, 2006. The only difference between these two offer letters is the inclusion, in the second offer letter, of Plaintiff's ownership interest in AIT. (*See* Evans Aff., Ex. 3). That section reads:

> Ownership:    A 5 percent ownership of AIT Laboratory effective Jan. 1[sic] 2006, (your start date) and another 5% of AIT Laboratories prorated over 5 years for a cap of 10%. You will be automatically vested at the full 10% if the company is sold or partners brought on prior to Jan. 1 [sic] 2011.

(*Id.*).

AIT argues that the second offer letter was signed after the first offer letter and does not control because it was not supported by new consideration. In support of this argument, AIT cites the court to *Buschman v. ADS Corp.*, 782 N.E.2d 423 (Ind. Ct. App. 2003). In *Buschman*, the plaintiff filed a lawsuit against his former employer contending that his employment contract provided for severance pay, and that he was entitled to the

same following his termination. *Id*. at 425. The Court of Appeals upheld the trial court's grant of summary judgment in favor of the employer, reasoning that the employer's second offer letter, which the plaintiff signed, was a valid employment contract, and did not contain any terms dealing with a severance package. *Id*. at 428. In response to the plaintiff's argument that the employer orally agreed to give Plaintiff a severance package after he signed the second offer letter, the Court found that Plaintiff had not provided any additional consideration necessary to support an oral modification of a written contract. *Id*. at 430.

This case is distinguishable from *Buschman*. First, the terms of the offer letters are the same except for the fact that the second offer letter contains a section entitled ownership interest. The ownership interest section of the second offer letter is clearly reflected in that document; it is not added as an additional term after-the-fact. Moreover, both documents declare that "[t]o formally accept this job offer please sign and date this job offer . . . ." *Id*. Such language adds further support for the fact that whatever document controls, it was a formal contract[1] of employment supported with adequate consideration.

AIT's declaration that the second offer was signed after the first offer letter is based solely on the affidavit of Dr. Evans. (*See* Evans Aff. ¶ 14). However, other evidence in the record puts Dr. Evans' assertion in doubt. As previously stated, both

---

[1] Moreover, the court finds it curious that Dr. Evans referred to Plaintiff's 5% ownership interest in AIT in his termination letter and now claims that Plaintiff was never entitled to it pursuant to Plaintiff's employment contract.

documents are dated December 30, 2005, and signed by Plaintiff and Dr. Evans on January 3, 2006. (*Compare* Evans Aff., Ex. 2 *with* Evans Aff., Ex. 3). There is no reference or other evidence in either letter as to which letter was signed first, and Plaintiff testified that he could not recall which was signed first. (*See* Plaintiff Dep. at 90). Faced with this conflicting evidence, the court finds there exists a genuine issue of material fact as to which document controls, and thus, as to whether Plaintiff was entitled to an ownership interest in AIT.

### 2. Ownership Interest

Assuming, *arguendo*, that the second offer letter controls, Plaintiff claims he is entitled to a 10% ownership interest in AIT. The plain meaning of the contractual provision at issue calls for a 5% interest up front, with the opportunity to acquire an additional 1% for each additional year of employment beginning on January 1, 2011. To construe this provision as Plaintiff requests would make little sense. No reasonable employer would agree to provide an ex-employee with an additional ownership interest following the employee's termination. Moreover, Plaintiff's proposed construction conflicts with the last full sentence of the contractual provision above (providing for automatic vesting if certain conditions are met on January 1, 2011). *Grandview Lot Owners Ass'n, Inc. v. Harmon*, 754 N.E.2d 554, 557 (Ind. Ct. App. 2001) ("[T]he parties' intentions when entering into the contract must be determined by reading the contract in its entirety and attempting to construe contractual provisions so as to harmonize the agreement."). Accordingly, to the extent the second offer controls, Plaintiff is entitled to

a 5% ownership interest in AIT as a matter of law.

### 3. Fraud

In the alternative, AIT contends that even if the second offer letter controls, the second offer letter is void because Plaintiff engaged in resume fraud. A contract premised on fraud may be voided and rescinded. *Northern Assurance Co. of America v. Summers*, 17 F.3d 956, 965 (7th Cir. 1994). To assert a claim for fraud in Indiana, a plaintiff must show: "'(1) a material misrepresentation of past or existing facts; (2) made with knowledge or reckless ignorance of falsity; (3) which caused the claimant to rely upon the misrepresentation to the claimant's detriment.'" *Massey v. Conseco Serv., L.L.C.*, 879 N.E.2d 605, 611 (Ind. Ct. App. 2008) (quoting *Siegel v. Williams*, 818 N.E.2d 510, 515 (Ind. Ct. App. 2004)); *Rice v. Shrunk*, 670 N.E.2d 1280, 1289 (Ind. 1996). "An intent to deceive, or 'scienter,' is an element of actual fraud, whether classified as a knowing or reckless misrepresentation or as an additional element to a knowing or reckless misrepresentation." *Wright v. Pennamped*, 657 N.E.2d 1223, 1230 (Ind. Ct. App. 1995).

AIT contends that Plaintiff committed resume fraud when he submitted his resume to AIT and failed to inform Dr. Evans, during his interviews or at any time thereafter, that he was "fired[2]" from eScreen. According to Plaintiff, he informed Dr. Foery and Dr.

---

[2] Plaintiff was not "fired," as that term is commonly used, for poor job performance. Rather, Plaintiff's position was "eliminated" due to a restructuring of the sales staff at eScreen. Being involuntarily terminated due to corporate restructuring is different from being involuntarily terminated for poor job performance.

Evans that he was unemployed and looking for work, even informing Dr. Evans that he needed health insurance immediately due to the fact that he was on a COBRA healthcare plan. The court is aware that AIT disputes these facts. However, on summary judgment, the Plaintiff's facts matter just as much as AIT's. It is for the jury to determine the weight to be given Plaintiff's testimony, not the court's. Accordingly, the court finds a genuine issue of material fact exists as to whether the Plaintiff made a knowing or reckless misrepresentation concerning his termination from eScreen to Dr. Evans which damaged AIT. Having so found, the court must **GRANT** AIT's motion for summary judgment on Plaintiff's claim for breach of contract with respect to the cap on Plaintiff's ownership interest in the event the second offer letter controls, and **DENY** AIT's motion for summary judgment on Plaintiff's breach of contract claim in all other respects. For the same reasons, the court must **DENY** AIT's motion for summary judgment on Count I of its Counterclaim for fraud.

      **B.**    **Unjust Enrichment**

AIT alleges "[b]y virtue of misrepresentations that [Plaintiff] made to Dr. Evans, [Plaintiff] has been unjustly enriched and AIT has been damaged." (Counterclaim ¶ 25). AIT therefore contends it is entitled to recoup the salary and commissions it paid to Plaintiff during his brief tenure with AIT. "'To prevail on a claim of unjust enrichment, a plaintiff must establish that a measurable benefit has been conferred on the defendant under such circumstances that the defendant's retention of the benefit without payment would be unjust.'" *Dominiack Mech., Inc. v. Dunbar*, 757 N.E.2d 186, 190 (Ind. Ct. App.

2001) (quoting *Bayh v. Sonnenburg*, 573 N.E.2d 398, 408 (Ind. 1991), *cert. denied*, 502 U.S. 1094 (1992)).  In support of this counterclaim, AIT relies upon the same facts as those relied upon by AIT in support of its fraud counterclaim.  And, for the reasons set forth above, the court must find that there exists a genuine issue of material fact as to whether Plaintiff misrepresented his prior employment to such a degree that his retention of the salary and benefits would be an injustice to AIT.  Accordingly, the court must **DENY** AIT's motion for summary judgment on Count II of its Counterclaim for unjust enrichment.

    **C.**    **Conversion**

AIT alleges that Plaintiff has not returned his laptop computer[3] issued to him by AIT even though AIT has requested the return of this property, and that he has thus committed civil conversion.  (Counterclaim ¶¶ 29-31).  To prevail on a civil conversion claim, AIT must show that: (1) Plaintiff exercised unauthorized control over the laptop and (2) that Plaintiff "'was aware of a high probability that this control was unauthorized.'"  *Manzon v. Stant Corp.*, 138 F.Supp.2d 1110, 1115 (S.D. Ind. 2001) (quoting *Midland-Guardian Co. v. United Consumers Club*, 499 N.E.2d 792, 798 (Ind. Ct. App. 1986)).

---

[3] Although the Counterclaim alleges that Plaintiff also exercised unauthorized control over a cell phone issued by AIT, AIT makes no mention of Plaintiff's cell phone in its papers. The court infers from AIT's silence that AIT withdraws that claim.

Plaintiff contends that he reasonably believed that the laptop computer was his to keep. In Plaintiff's deposition, he testified that because he "came on board as an owner in the company," he believed that the laptop was his personal property. (Plaintiff Dep. at 102). Plaintiff reasoned that AIT employees had to sign a document that they were issued AIT property, and that, with respect to the laptop, "[he] did not sign anything that said it was AIT property." (*Id*. at 103). Plaintiff did not return the laptop as requested in Dr. Evans' termination letter because he believed that if he did, he would have been "compliant" and thus, he would have vitiated any opportunity to claim an ownership interest in AIT. (*Id*. at 104). Given this evidence, the court finds a reasonable jury could conclude that Plaintiff reasonably believed that the laptop was his personal property. That said, a reasonable jury could easily conclude otherwise. The ultimate resolution to this issue, then, is best left for a jury. The court therefore **DENIES** AIT's motion for summary judgment on Count III of its Counterclaim for conversion.

## IV.    Conclusion

For the reasons set forth above, the court **GRANTS** in part, and **DENIES** in part, AIT's Motion for Summary Judgment on Plaintiff's Breach of Contract Claim and on AIT's Fraud, Unjust Enrichment, and Conversion Claims (Docket # 48). Specifically, AIT's motion is **GRANTED** with respect to the limited issue of Plaintiff's ownership interest in AIT were the jury to find that the second offer letter represents the contract of

employment between the parties.  AIT's motion is **DENIED** in all other respects.


**SO ORDERED** this 14th day of October 2008.

                                       RICHARD L. YOUNG, JUDGE
                                       United States District Court
                                       Southern District of Indiana


Electronic Copies to:

James F. Ehrenberg Jr.
BARNES & THORNBURG LLP
jehrenberg@btlaw.com

Brett R. Fleitz
KROGER GARDIS & REGAS LLP
brett@kgrlaw.com

John R. Maley
BARNES & THORNBURG
jmaley@btlaw.com

Kurtis Allen Marshall
KROGER, GARDIS & REGAS LLP
kam@kgrlaw.com

Joel Samuel Paul
lawjoel@hotmail.com